## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| **BRANDON L. DAILY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No.: 24-cv-2248 |
| **BOARD OF COMMUNITY COLLEGE** ) | |
| **DISTRICT NO. 507, COUNTIES OF** ) | **JURY TRIAL** |
| **VERMILION, EDGAR, IROQUOIS,** ) | **DEMANDED** |
| **CHAMPAIGN, and FORD, IN THE** ) | |
| **STATE OF ILLINOIS,** ) | |
| ) | |
| **Defendant.** | |

## COMPLAINT AT LAW

NOW COMES Plaintiff, Mr. Brandon L. Daily, by and through his attorney of record, Ronald S. Langacker of Langacker Law, and for his complaint against Defendant, Board of Community College District No. 507, Counties of Vermilion, Edgar, Iroquois, Champaign, and Ford, in the State of Illinois, hereby states as follows:

## NATURE OF THE ACTION

1. This is an action for damages and equitable relief arising under 42 U.S.C. 1983, the Fourteenth Amendment to the United States Constitution, and Illinois common law.

2. Plaintiff was deprived of his civil and constitutional rights when Defendant wrongfully terminated his employment in violation of his employment contract and without due process. Defendant's actions have resulted in substantial harm to Plaintiff, including the loss of employment and other benefits conferred by his employment agreement, irreparable damage to his personal and professional reputation, loss of various professional opportunities, and acute emotional distress.

1

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. 1331 and 1343, as this action arises under the laws of the United States, specifically 42 U.S.C. 1983 and the Fourteenth Amendment to the United States Constitution.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. 1367.

5. The venue of this Court to entertain the issues raised in this case is appropriate by virtue of Title 28, United States Code, Section 1391(b), since the activities within the judicial district of this Court and the claims giving rise to the above-captioned proceeding occurred within the judicial district of this Court.

## STATEMENT OF FACTS

### Daily's Employment as a Full-Time DACC Faculty Member

6. Plaintiff, Brandon Daily ("Daily"), was employed as a full-time faculty member at Danville Area Community College pursuant to a valid and enforceable employment contract from August 16, 2023, until his termination on November 16, 2023.

7. Defendant, Board of Community College District No. 507, Counties of Vermilion, Edgar, Iroquois, Champaign, and Ford, in the State of Illinois, ("Danville Area Community College," "College," or "DACC"), is a body politic and corporate organized under the Illinois Public Community Colleges Act, 110 ILCS 805 *et seq.*, which has offices and does business in Danville, Illinois.

8. Daily graduated from the Wind Energy Program at Danville Area Community College in 2012, and found employment working with the Invenergy Energy Center and the California Ridge Energy Center in Fithian, Illinois.

9. Daily learned about the open teaching position for a Wind/Solar Instructor at DACC in the fall of 2023 from a friend who thought Daily's practical experience in the field would be an asset to the College. Daily believed that accepting a teaching position with his alma mater would provide him an opportunity to share his practical real-world experience with prospective students and give them a better understanding of the program.

10. On August 16, 2023, Plaintiff Brandon Daily and Danville Area Community College entered into an employment contract which provided that Daily would serve as a Wind Energy/Solar Technician Instructor at DACC for the 2023-2024 school year (hereinafter "Employment Contract") (Exhibit A).

11. Section 9 of the Employment Contract states that, by his acceptance of the contract, Daily agrees to be governed by the policies of the Board.

12. Board Policy 4055, entitled *Suspension or Dismissal for Cause*, states the following regarding employees of DACC:

> "Whenever practicable, prior to any suspension without pay or termination of employment, the employee shall be notified of the reason for such disciplinary action by the President or his designee and shall be afforded the opportunity to answer, rebut or state his or her position with respect to the basis for the contemplated disciplinary action.
>
> If an employee is suspended without pay, and/or if an employee is notified by the President or the President's designee of a decision to recommend the termination of his or her employment to the Board of Trustees, then the employee may request a hearing before the Board by submitting a written request to the President of the College within seven (7) calendar days after the employee receives notice of the suspension without pay and/or the recommended termination." (Exhibit B.)

13. In short, Board Policy 4055 provides that prior to an employee being suspended or dismissed for cause, the employee has the right to request a hearing before the Board; the right to counsel at that hearing; and the right to answer, rebut or state his or her position to the contemplated discipline.

14. Prior to his employment with DACC, Daily had never been employed in an academic environment in any capacity. Daily had no prior experience teaching on a public, private, secondary, or non-secondary level, a fact of which DACC was aware.

15. The training DACC provided to Daily on how to teach consisted of rudimentary training modules which did little more than simply advise Daily of the College's policies (Exhibit C).

16. The DACC "Diversity Inclusion: Faculty and Staff: Full Course" training module was approximately 13 minutes in length. Daily was not provided any specific training in classroom management, student discipline, or policies and procedures regarding reporting.

### November 8, 2023 Incident

17. At the beginning of the fall 2023 semester, Daily was unexpectedly assigned to teach a construction class at DACC for the College Express Program ("College Express"). College Express provides high school students with the opportunity to take classes for college credit at DACC. College Express participants are not considered DACC students.

18. Daily was not provided with any additional training regarding the College Express Program students, such as their unique relationship with the college and whether there are any additional considerations teaching high school students—most of whom were minors.

19. The College Express class was taught in the woodshop area at DACC. Several other professors with several other classes also utilized the same woodshop area.

20. On Wednesday, November 8, three College Express high school students (Student A, Student B, and Student C) asked Daily if they could utilize the woodshop after normal class hours in order to complete a project. Daily agreed, allowing the students to work in the woodshop for approximately one hour before he needed to leave for a personal obligation. During that time

4

period, Daily completed other tasks, coming and going from the woodshop to periodically check in on the students.

21. To Daily's knowledge and belief, at some time on or prior to November 8, 2023, Professor Doug Hunter had taught his students woodworking joinery methods by having them construct wooden "plus-sign" crosses that had been coupled together using various joinery techniques. The "plus-sign" crosses had been left in the woodshop.

22. On the Wednesday evening when they were working independently in the woodshop, Students A, B and C saw the wooden plus-sign crosses sitting unattended, and the students apparently felt it would be "funny" to add short legs to the crossbars, turning the plus-sign into a swastika symbol. The students hung the swastika on a deer-blind project located within the woodshop.

23. When Daily returned to the woodshop and saw the swastika, he immediately told the three students to take apart the swastika (removing the "legs" but leaving the original wooden "plus-sign" cross which was itself a student project) and briefly left the room. The students ignored Daily's directive to take the swastika apart.

24. Daily returned the woodshop a second time and saw that the swastika had still not been disassembled. Daily became more assertive and once again told the students to take the swastika apart but leave the "cross" portion intact. Daily left the room.

25. While the students advised Daily they would comply with his instructions, for whatever reason they ultimately ignored his directive to take the swastika apart, and instead placed the swastika back with the other wooden "plus-sign" crosses.

26. Daily never, at any point, condoned or sanctioned the behavior of the three students.

**Daily's Suspension and Subsequent Termination from DACC**

27. From Wednesday afternoon, November 8, until Monday, November 13, DACC was closed.

28. On November 13, the woodshop students who had created the original "plus-sign" crosses returned to their class. The student who's cross had been defaced by Students A, B and C found their project in the pile where it had been placed, and reported the incident to Professor Doug Hunter, who in turn reported the incident to DACC.

29. On November 13, Tammy Riggleman with DACC Human Relations contacted Daily and informed him that he needed to come to DACC because there had been an "incident." No additional information was provided to Daily at that time.

30. After arriving at DACC, Daily was called into a meeting with Jill Cranmore, (VP of Human Resources) Dr. Bridges (Vice President of Academic Affairs) and Daily's union representative, Kathy Hunter. Daily was not told that the meeting was part of any investigation and assumed that the meeting was informational in nature.

31. At the end of the meeting, Daily was advised he would be placed on paid leave pending an investigation.

32. Around 5:15 p.m. on November 13, 2023, only a few hours after Daily's impromptu meeting, DACC President Stephen Nacco ("Nacco") sent a "college broadcast" email to faculty and students which stated that he had been informed a swastika had been created in a DACC classroom and that DACC would take "immediate and irrevocable disciplinary action" on the matter.

33. At the time Nacco issued that statement, he was aware that Daily was being investigated in connection with the incident, and that the individual who DACC intended to take "immediate and irrevocable disciplinary action" towards was Daily.

34. On November 14, 2023, Nathan Howie (Chief of Security), Jill Cranmore, and Kelly Cervantes (College Express Representative) interviewed Students A, B and C upon their arrival on the DACC campus.

35. During the interview, the students provided false and inaccurate information regarding Daily's alleged involvement in the construction of the swastika. In an apparent effort to lessen their own culpability, one of the students falsely claimed they had actually discussed the construction of the swastika with Daily. Another stated that Daily did not advise the students to take the swastika apart.

36. Those students' statements were later proven to be false, but DACC did not inform Daily about the students' false claims.

37. Approximately an hour after meeting with the three students, Cranmore, Bridges, and Nacco had a meeting to discuss the investigation. The decision was made to immediately terminate Daily for just cause. One of the reasons for terminating Daily was due to the false statements made by the students earlier that afternoon.

38. Later on November 14, 2023, Daily received an email from Nacco stating that the college was "prepared to make a recommendation to the Board of Trustees to terminate your employment as a probationary instructor effective the date of the Board of Trustees meeting" (Exhibit D).

39. Despite the fact that the termination was only "recommended" at this stage, Nacco's letter to Daily stated that Daily's benefits would end on November 30, 2023, and that his "final paycheck would be processed and mailed to [his] home at the end of November" (Exhibit D).

40. On November 16, 2023, Daily emailed Nacco to request a formal hearing before the Board per Policy 4055 (Exhibit E). Nacco replied later that day and denied Daily a formal hearing, in direct violation of Policy 4055.

41. Later that same day, the DACC Board of Trustees voted unanimously to terminate Daily's employment. The Board did not discuss Daily's termination in either open or closed session.

42. Daily's termination from DACC was covered by the local media in Central Illinois, and his termination and its circumstances became widely known (Exhibit E).

43. Daily requested a post-termination hearing before the Board pursuant to Policy 4055, which was also categorically denied.

44. As set forth above, at no time did either President Nacco or the DACC Board offer Plaintiff a hearing or a meaningful opportunity to respond to or refute the charges against him, either before or after his termination.

## COUNT I
### (Deprivation of Property Interest -Violation of the Fourteenth Amendment to the U.S. Constitution)

45. Plaintiff repeats and re-alleges all of the paragraphs in this complaint as if fully set forth herein.

46. The Fourteenth Amendment to the United States Constitution provides for a right of procedural due process and prohibits the deprivation of property and liberty without due process.

47. The August 16, 2023, Employment Contract gives Plaintiff a protectable property interest within the meaning of the Fourteenth Amendment to the United States Constitution 42 U.S. § 1983 in his continued employment as a full-time instructor at Danville Area Community College.

48. Under the Fourteenth Amendment to the United States Constitution, Plaintiff cannot be deprived of a property interest without adequate due process protections, including notice of the charges against him, notice of the evidence upon which the charges will be based, and a chance to present witnesses and confront adverse evidence at fair hearing before an impartial tribunal.

49. Plaintiff's Employment Contract, which specifically incorporates DACC Board Policies, conferred and established a property interest for Plaintiff y in his continued employment as a non-tenured full-time faculty member at DACC from the agreed-upon term of August 16, 2023, through June 30, 2024.

50. Plaintiff has a present entitlement to his position as a full-time faculty member from August 16, 2023, until June 30, 2024, by virtue of his Employment Contract.

51. As Plaintiff had a property interest in his employment, the Board could not lawfully terminate Plaintiff's employment without due process, or in contravention of the terms of his Employment Contract and/or Board Policy.

52. Plaintiff was denied his right to receive a fair termination hearing, as required by law, by not being allowed adequate notice of the charges against him, the opportunity to present evidence, call witnesses, have counsel present on his behalf, and a fair opportunity to be heard.

53. Defendant's actions were taken under color of law and deprived Plaintiff of a protective property interest in his employment without affording him due process rights to a fair and impartial pre-termination hearing, in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

54. The Board's decision to terminate Plaintiff was arbitrary, capricious, and unreasonable under the circumstances.

55. Plaintiff is entitled to damages to compensate him for the actual and threatened injuries that have resulted or will result from Defendant's actions described above.

56. Following his termination, Plaintiff had requested a hearing before the Board of Trustees; however, his request was denied.

57. As a direct and proximate result of the foregoing conduct, Plaintiff sustained the loss of economic benefits derived through his employment as well as his subsequent inability to secure employment. Additionally, Plaintiff has suffered emotional pain and anguish, damage to his reputation, embarrassment and humiliation, inconvenience, and the loss of enjoyment of life.

### COUNT II
### (Deprivation of Liberty Interest - Violation of the Fourteenth Amendment to the U.S. Constitution)

58. Plaintiff repeats and re-alleges all of the paragraphs in this complaint as if fully set forth herein.

59. Under the Fourteenth Amendment to the United States Constitution, Plaintiff has a liberty interest in employment in a chosen profession and the state cannot deprive Plaintiff of that interest without due process. The Board has deprived Plaintiff of his occupational liberty interests without due process.

60. Plaintiff's liberty interests have been implicated as a result of Defendant's statements made both prior and contemporaneous to actions taken by the Board with respect to Plaintiff's employment. Such employment actions were taken against Plaintiff without first permitting Plaintiff a meaningful opportunity to clear his name of Defendant's stigmatizing statements.

61. The Board made the charges public.

62. Plaintiff suffered a tangible loss of other employment opportunities as a result of the public disclosure.

63. By their actions, Defendant deprived Plaintiff of his liberty interest without due process of law, in violation of the Fourteenth Amendment of the United States Constitution.

64. As a direct and proximate result of the foregoing conduct, Plaintiff sustained the loss of economic benefits derived through his employment as well as his subsequent inability to secure

employment. Additionally, Plaintiff has suffered emotional pain and anguish, damage to his reputation, embarrassment and humiliation, inconvenience, and the loss of enjoyment of life.

## COUNT III
**(Breach of Contract - State Law Claim)**

65. Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

66. As described more fully above, Plaintiff entered into his Employment Contract on August 16, 2023.

67. Plaintiff has fully fulfilled his obligations under the contract.

68. Pursuant to the contract Plaintiff was, prior to being terminated, entitled to a hearing before the Board in order to properly respond to the decision to recommend his termination.

69. Defendant breached the contract by declaring that that Plaintiff shall not be permitted to serve the remaining term of his Employment Contract, and as a result, Plaintiff will not receive his remaining compensation and other benefits as provided within the Employment Contract.

70. Plaintiff has suffered damages as a direct and proximate result of the Defendant's breach of contract.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief:

A. Award compensatory damages to Plaintiff for Defendant's violations of his constitutional and common law rights described above;

B. Award compensatory damages to Plaintiff for Defendant's breach of the August 16, 2023, Employment Contract as described above;

C. Issue a mandatory injunction directing Defendant to reinstate Plaintiff to the position of employment which he held prior to the conduct complained of in this Complaint with all employment duties, responsibilities, salaries, benefits and rights attendant to that position;

D. Assess against Defendant the costs and expenses incurred by Plaintiff in maintaining the above captioned proceeding together with the reasonable attorney fees incurred by him in prosecuting the above case;

E. Award Plaintiff pre-judgment interest for the defined sum of wages and benefits lost;

F. Award punitive damages as permitted by law, and against Defendant for their violations of Plaintiff's constitutional and common law rights described above;

G. Award costs and attorneys' fees to Plaintiff; and

H. For all further relief the court deems equitable and just.

PLAINTIFF DEMANDS TRIAL BY JURY.

Ronald S. Langacker, #6239469  
Langacker Law, Ltd.  
210 N. Broadway  
Urbana, Illinois 61801  
(217) 954-1025  
ron@langackerlaw.com  

BRANDON L. DAILY  
PLAINTIFF  

By: /s/Ronald S. Langacker  
Ronald S. Langacker  
Attorney for Plaintiff